## APPEALS OF R. H. SOAPER AND JAMES E. RANKIN, SR.

Docket Nos. 2517, 2518.   Submitted October 15, 1925.   Decided February 13, 1926.

Upon the evidence, *held*, that the Commissioner's determination of the fair market value of the capital stock of a corporation as of March 1, 1913, should not be disturbed.

*John C. Worsham, Esq.*, for the taxpayers.
*J. W. Fisher* and *R. A. Littleton, Esqs.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

The taxpayer, R. H. Soaper, appeals from the determination of a deficiency of $32,142.10, income tax for 1920. The taxpayer, James E. Rankin, Sr., appeals from the determination of a deficiency of $1,734.71, income tax for 1920. Each of these appeals involves the determination of the fair market value of the capital stock of Henderson Cotton Mills on March 1, 1913. The two appeals were consolidated.

### FINDINGS OF FACT.

1. The taxpayer, R. H. Soaper, is a citizen and resident of Henderson, Ky. Prior to March 1, 1913, Soaper acquired 711 shares of the capital stock of the Henderson Cotton Mills. In April, 1920, said stock was sold by him for $300 per share. In his income-tax return for 1920, he reported said sale and computed and reported a profit thereon upon the basis of a fair market value on March 1, 1913, of $194.59 per share. The Commissioner determined the fair market value of said stock, as of March 1, 1913, to be $150 per share, increased Soaper's income accordingly, and determined the deficiency here in issue.

2. The taxpayer, James E. Rankin, Sr., is a citizen and resident of Henderson, Ky. Prior to March 1, 1913, Rankin acquired 151 shares of the capital stock of the Henderson Cotton Mills. In April, 1920, said stock was sold by him for $300 per share. In his income-tax return for 1920, he reported said sale and computed and reported a profit thereon upon the basis of a fair market value on

March 1, 1913, of $194.59 per share. The Commissioner determined the fair market value of said stock, as of March 1, 1913, to be $150 per share, increased Rankin's income accordingly, and determined the deficiency here in issue.

3. The Henderson Cotton Mills was a Kentucky corporation, with its principal place of business at Henderson. It was organized in 1885 with a capital stock of $400,000. Operations were begun in 1886. The capital stock was increased to $450,000 in 1896 and to $500,000 in 1901. The par value of the stock was $100 per share. During the period of its existence the corporation was engaged in the manufacture of cotton goods at Henderson.

4. From the date of organization in 1886 to March 1, 1913, the average earnings were over 12 per cent of the capital and surplus disclosed by the books of the corporation. The earnings of the corporation from April 1, 1897, to March 1, 1913, before depreciation, were $966,852.09. During the same period the corporation charged off depreciation of $573,220.56 and paid dividends of $520,500. Depreciation was not entered on the books at regular intervals, but from time to time lump sums were charged off as depreciation. The average capital and surplus for the same period, as shown by the books, was approximately $616,000. For the years 1908 to 1912, inclusive, the earnings of the corporation before deducting any depreciation, the dividends paid, and the capital and surplus, as shown by the books, were as follows:

| Year | Earnings before depreciation. | | Dividends. | Capital and surplus. |
|------|------------------------------|--------------|------------|----------------------|
| 1908 | Loss | $1,667.89 | $40,000.00 | $753,638.12 |
| 1909 | Profit | 55,270.11 | 35,000.00 | 530,763.94 |
| 1910 | Loss | 27,114.20 | 15,000.00 | 488,649.74 |
| 1911 | Loss | 25,614.05 | None. | [1] 516,417.97 |
| 1912 | Profit | 108,577.93 | 45,000.00 | 579,995.90 |

[1] In 1911, $53,402.28 depreciation previously written off was restored on the books.

5. On March 1, 1913, the book value of the stock was approximately $119 per share.

6. From March 1, 1913, to May 20, 1920, the earnings of the corporation were $1,169,160.90, after allowing for depreciation and for payment of taxes. The average capital and surplus during the same period approximated $800,000. Dividends during the same period amounted to $375,000. On December 31, 1919, the capital and surplus of the corporation, as shown upon its books, was $1,060,963.94. The earnings, dividends, and capital and surplus, as shown by the books of the corporation, from 1915 to May 20, 1920, were as follows:

| Year. | Earnings after depreciation and taxes. | Dividends. | Capital and surplus. |
|---|---|---|---|
| 1915 | Profit_____ $43,432.58 | $30,000 | $599,526.12 |
| 1916 | Profit_____ 136,737.46 | 40,000 | 696,263.58 |
| 1917 | Profit_____ 259,721.46 | 40,000 | 915,985.04 |
| 1918 | Profit_____ 630,083.29 | 100,000 | 1,446,068.33 |
| 1919 | Loss_____ 378,792.89 | 45,000 | 1,060,963.94 |
| 1920 | Profit_____ 421,783.47 | 60,000 | 1,384,058.91 |

7. Except for the year 1911, when no dividends were paid, the corporation has regularly paid dividends since 1887, varying, prior to 1913, from 4 per cent to 12 per cent per annum. For the 10 years prior to 1913 the dividends averaged 6.8 per cent per annum.

8. The stock of the corporation was closely held and there was no active or recognized market for it. The increase of $50,000 in 1901 was sold at $151 per share. In 1917, five shares of the stock were sold by an estate for $135 per share.

DECISION.

The determinations of the Commissioner are approved.

OPINION.

PHILLIPS: These appeals present solely the question of the fair market value on March 1, 1913, of the stock of Henderson Cotton Mills. There was no market establishing sales prices on or about March 1, 1913, and taxpayers are forced to rely upon other evidence of its value on that date.

The taxpayers assert that the actual value of the assets of the corporation on March 1, 1913, was greatly in excess of the book values, and that, based upon such actual values, the stock was worth $194.59 per share on March 1, 1913. In support of such contention the taxpayers offered in evidence an appraisal of the plant of the company as of March 1, 1913. This appraisal is " based on the total replacement cost on that date less accrued depreciation." While such an appraisal may have many legitimate uses, it can be of little assistance in solving the question presented to us. *Appeal of Stokes Milling Co.,* 2 B. T. A. 1284. The statute specifies that the fair market value of the stock shall be the test. The taxpayer contends that, in the absence of actual sales, the fair market value of the stock is equal to the fair market value of the assets of the company. Even though we were to accept this contention, the fair market value of the assets is entirely different from the replacement cost, less accrued depreciation. The statute does not ask what it would cost to replace the assets in their worn condition, but what price could be obtained for them in a fair market. The testimony indicates that on March 1,

1913, the cotton manufacturing business was in a depressed condition which had continued for a period of several years. Under such conditions, it can not be assumed with any hope of accuracy that the replacement cost of a cotton mill represents its fair value on the market. There are other objections to the appraisal which it is unnecessary to discuss in this appeal.

The corporation had good earnings and dividend records. It appears that from the date of organization to March 1, 1913, the average annual earnings were approximately 12 per cent of the capital and surplus invested. The book value of the stock on March 1, 1913, was approximately $119 per share, excluding any value to be attributed to the good will or earning capacity of the corporation or any appreciation in value of its assets over cost less depreciation written off. Under such circumstances, it might well be contended that the stock had a value in excess of $150 per share on March 1, 1913, except for the fact that the years immediately preceding that date were the least successful in the entire history of the company. In 1908, 1910, and 1911, the corporation sustained losses. In 1909 there was a profit comparing favorably with the average profit of prior years. In 1912 there was a profit of over $100,000 from the operation of the business. The testimony, however, is to the effect that on March 1, 1913, the depression in the business still continued.

At the time of the sale in April, 1920, the stock had a book value, based on the balance sheet of December 31, 1919, and, disregarding the substantial profits subsequent to that date, of $212 per share. For the five years preceding, the corporation had earned profits exceeding 30 per cent upon its capital and surplus as shown by its books. At that time there was good demand for the products manufactured by the taxpayer.

Considering the conditions which existed in March, 1913, and which had existed for several years prior thereto, we reach the conclusion that the value of $150 assigned to the stock by the Commissioner should not be disturbed. Comparing the situations which existed in 1913 and in 1920, we fail to find any discrepancy between a value of $150 in 1913, when the stock had a book value of $119 and its earning capacity was impaired, and the sales price of $300 in 1920, when the stock had a book value of more than $212 and a record of exceptional earnings for the preceding years.